IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 11, 2024 Session

**JANICE L. RUIZ v. BUTTS FOODS, L.P., ET AL.**

**Appeal from the Chancery Court for Madison County**
No. 81762     Steven W. Maroney, Chancellor

_____

**No. W2023-01053-COA-R3-CV**

_____

The plaintiff filed this lawsuit against her joint employers, asserting sexual harassment/ hostile work environment, retaliation, and other related claims. The employers filed a motion to compel arbitration. The plaintiff opposed the motion and invoked the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, 9 U.S.C. §§ 401--402. The trial court deemed the Act applicable and denied the motion to compel arbitration. The employers appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Erica Nicole Johnson, Memphis, Tennessee, and Wesley Redmond, *pro hac vice*, Birmingham, Alabama, for the appellants, Butts Foods, L.P., and Quirch Foods, LLC.

Jason Andrew Lee, Mount Juliet, Tennessee, for the appellee, Janice Ruiz.

**OPINION**

**I.     FACTS & PROCEDURAL HISTORY**

Janice Ruiz began working for Butts Foods, LP, and Quirch Foods, LLC, in January 2022. Within a few weeks, she was allegedly "subjected to a sexually hostile work environment and sexual harassment" due to comments and actions by manager James Goodrich. The harassment worsened over time, and Ms. Ruiz reported the sexual harassment to the general manager in April 2022. No action was taken, and the sexual

harassment continued over the following months. In August 2022, Ms. Ruiz reported the sexual harassment to the human resources manager. As a result, Ms. Ruiz's "workspace" was moved, but she was still required to work around Mr. Goodrich, and he continued to make comments. He allegedly turned other employees against Ms. Ruiz and encouraged them to give her "cold shoulder treatment," so she was excluded from events, making her job more difficult.

In September 2022, Ms. Ruiz filed this lawsuit against Butts Foods and Quirch Foods, whom she referred to collectively as her "joint-employer," and she also named Mr. Goodrich as a defendant. Her complaint, as amended, asserted eight separate counts, including "Count I - Sexual Harassment, Sexually Hostile Work Environment, Hostile Work Environment due to Sex and Sexual Discrimination under the Tennessee Human Rights Act" and "Count II – Retaliation under the Tennessee Human Rights Act." Her remaining counts alleged intentional infliction of emotional distress, negligent infliction of emotional distress, negligence (in failing to protect Ms. Ruiz), gross negligence/recklessness, negligent supervision/training/retention, and battery.

The employers filed a motion to compel arbitration. They asserted that Ms. Ruiz had agreed to an arbitration agreement, as a condition of her employment, requiring her to resolve all disputes arising out of the employment relationship through dispute resolution including binding arbitration. They asserted that the agreement was binding and governed by the Federal Arbitration Act. The employers acknowledged the recent passage of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, 9 U.S.C. §§ 401--402, which provides, in pertinent part:

> **(a) In general.**--Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a).[1] However, the Act applies "with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act [March 3, 2022]." Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (Mar. 3, 2022). As such, the employers argued that Ms. Ruiz's claims for sexual harassment "allegedly began" before the enactment of the Act, and therefore, it did not apply. The employers pointed to the allegations in Ms. Ruiz's complaint that she began work in January 2022 and the hostile work environment began within a few weeks. They conceded that Ms. Ruiz also alleged that the harassment

---

[1] The "Definitions" section of the Act provides that "[t]he term 'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4).

continued after the March 3, 2022 date of enactment. Still, the employers argued that her sexual harassment claims were not subject to the Act because the harassment *began* before its passage. In addition, the employers argued that the Act would not apply in any event to the other claims asserted in the complaint, beyond sexual harassment and hostile work environment, so those additional claims must be arbitrated.

Ms. Ruiz filed a response, opposing the motion to compel arbitration. She argued that the Act applied because even though the harassment admittedly began within a few weeks, it worsened over time, which caused her to first report the harassment at the point when it became severe in April 2022, after the March 3 effective date of the Act. She also noted that the harassment, according to the complaint, continued for months until she reported it again in August 2022. Ms. Ruiz also pointed out that she alleged retaliation that occurred thereafter, in response to her reports. Thus, she argued that the "vast majority" of the acts occurred after March 3, 2022, and therefore, her sexual harassment and hostile work environment claim arose or accrued after that date as well. Ms. Ruiz argued that a sexual harassment claim only becomes actionable when the conduct becomes severe or pervasive. She acknowledged that the Act was relatively new but argued that her position was supported by the decision of at least one federal district court that had addressed the issue. Ms. Ruiz also argued that the employers' attempt to "carve[] out" her related tort claims for arbitration was not supported by the language of the Act or relevant caselaw. She noted that the Act itself provides that the arbitration agreement is invalid and unenforceable "with respect to a *case* which is filed under Federal, Tribal, or State law and relates to the . . . sexual harassment dispute." 9 U.S.C. § 402(a) (emphasis added). Thus, Ms. Ruiz contended that the entire case was not subject to arbitration.

After a hearing, the trial court entered an order denying the employers' motion to compel arbitration. The trial court found that the allegations in the complaint met the statutory definition of a "sexual harassment dispute" within the meaning of the Act, and therefore, the Act, if applicable, would give Ms. Ruiz the right to opt out of the arbitration agreement and seek redress for her claims in this lawsuit. The trial court noted the employers' argument that the Act was inapplicable, "not because of the character of her claims, but rather, the timing of those claims." At the outset, the trial court noted that another chancery court in Tennessee had recently considered the applicability of the Act and found that it applied to the case before it, even though the entirety of the offensive sexual conduct occurred prior to March 3, 2022, so long as the lawsuit was filed after March 3, 2022. The trial court noted that, under that logic, the Act would apply to the present case as well. However, given that the other chancery court's decision had been appealed and was subject to reversal, the trial court made an alternative finding in the event that the applicability of the Act was to be considered "only with respect to the timing of the underlying conduct alone and not the time of filing of a lawsuit based upon that conduct."

Based on its review of the complaint, the trial court found that "at least some" of the sexually offensive conduct began prior to March 3, 2022. However, the trial court pointed

out that the complaint also set forth "an exhaustive list" of examples of sexually offensive conduct that occurred after March 3.  The trial court found that the "pre-March 3" conduct appeared to consist of "frequent sexual comments" by Mr. Goodrich, comments about him having affairs, and one instance in which he pulled Ms. Ruiz's hair in a sexual manner and made a suggestive comment.  However, the trial court also noted the position of Ms. Ruiz that such conduct was repeated after March 3 and therefore constituted a continuing violation, or part of an overall constellation of activity that constituted a hostile work environment.  On the other hand, the employers suggested that the claim arose or accrued on the *first* date of sexually offensive conduct, which was prior to March 3.

The trial court found that a cause of action for sexual harassment generally does not "accrue" until the working environment has become sufficiently hostile or abusive that it alters the employee's working conditions.  The trial court further noted that, in the context of considering statute of limitations issues for sexual harassment claims under the THRA, Tennessee courts have considered whether the underlying conduct constituted individual discrete events or collectively represented a continuing violation.  The trial court recognized that in the event of a continuing violation, the cause of action does not accrue until the latest of the series of offensive acts.  In that context, the trial court noted, courts consider three factors to determine whether the defendant's conduct was a series of discrete acts or a continuing violation – subject matter, frequency, and, to some extent, the degree of permanence.  Finally, the trial court noted that hostile work environment harassment occurs where conduct unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive working environment.[2]

Applying these considerations to the present case, the trial court found that the complaint alleged that the sexual harassment by Mr. Goodrich reached a level of severity in April 2022 "such that she reported it to management," but this failed to stop the harassment.  The trial court found that Ms. Ruiz made an additional complaint in August

---

[2] As we noted in *Phelps v. State*, 634 S.W.3d 721, 727-28 (Tenn. Ct. App. 2021) (quoting *Campbell v Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996)),

> To prevail on a hostile work environment claim in a sexual harassment case, an employee must assert and prove that (1) the employee is a member of a protected class; (2) the employee was subjected to unwelcomed sexual harassment; (3) the harassment occurred because of the employee's gender; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew, or should have known of the harassment and failed to respond with prompt and appropriate corrective action.

However, "[t]o be considered severe or pervasive enough to be actionable, the harassing conduct must be to such a degree that the workplace becomes so permeated with discriminatory intimidation, ridicule or insult that it alters the conditions of employment."  *McCain v. Saint Thomas Med. Partners*, No. M2020-00880-COA-R3-CV, 2021 WL 2156912, at *4 (Tenn. Ct. App. May 27, 2021) (quoting *Potter v. Yapp USA Auto. Sys., Inc.*, No. M2019-01351-COA-R3-CV, 2020 WL 2611681, at *3 (Tenn. Ct. App. May 22, 2020), *perm. app. denied* (Tenn. Oct. 8, 2020)).

2022, which led to the alleged retaliation for her reports, causing a direct impact on her ability to perform her job. As such, the trial court concluded that "the offensive conduct first became sufficiently hostile or abusive so as to alter Plaintiff's working conditions" in April 2022, which was "well past the March 3, 2022 date when the EFAA became applicable." The trial court further held that the allegations in the complaint "amount to a continuing violation." The court found that the complaint alleged the same types of offensive conduct occurring on a repeated basis, with frequency, and continuing past the effective date of March 3. Thus, the court held, "the offensive conduct amounted to a continuing violation," and the claim did not accrue until the last offensive act, after March 3.

The trial court also considered the employers' arguments regarding the additional claims asserted in this case. The trial court found that Ms. Ruiz's first two counts – for sexual harassment and retaliation – clearly addressed claims covered by the scope of the Act, but she had also alleged several other claims. Quoting 9 U.S.C. § 402, the trial court noted that the Act applies to "a case" filed under federal or state law that relates to the sexual harassment dispute. Thus, the trial court concluded that the "case" would refer to the legal proceeding as an undivided whole, without differentiating among the causes of action asserted therein. Accordingly, it found that all of the claims asserted in the complaint were removed from the arbitration requirement and subject to litigation in court. The motion to compel arbitration was denied. The employers filed a notice of appeal in July 2023.

## II. ISSUES PRESENTED

The employers present the following issues for review on appeal:

1. Did the Chancery Court mistakenly apply the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 to Count I of Plaintiff-Appellee's Complaint, which is a sexual harassment/hostile work environment claim, that would permit Plaintiff to change the form of her claim from arbitration to court?
2. Did the Chancery Court mistakenly apply the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 to Counts II through VIII of Plaintiff-Appellee's Complaint, which are _non_-sexual harassment claims, that would permit Plaintiff to change the forum of her claim from arbitration to court?

For the following reasons, we affirm the decision of the chancery court.

## III. DISCUSSION

"By passing the Ending Forced Arbitration of Sexual Assault and Sexual

- 5 -

Harassment Act of 2021 (EFAA), Congress has begun to chip away at the breadth of the FAA." *Steinberg v. Capgemini Am., Inc.*, No. CV 22-489, 2022 WL 3371323, at *2 (E.D. Pa. Aug. 16, 2022). "Enacted in 2022, the EFAA is the first major amendment in the history of the FAA." *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 84 (2d Cir. 2024). The Act "pulls back on the long-held presumption towards arbitration where sexual harassment is concerned," and it "unequivocally ends the era of employers being able to unilaterally compel arbitration in sexual harassment cases." *Steinberg*, 2022 WL 3371323, at *2. The purpose of the Act, according to the House Judiciary Committee's Report, was to prohibit "forced arbitration" in cases involving sexual harassment because "'the arbitration system lacks transparency and precedential guidance of the justice system' and is 'shielded from public scrutiny,' and 'there is no guarantee that the relevant law will be applied to these disputes or that fundamental notions of fairness and equity will be upheld in the process.'" *Johnson v. Everyrealm, Inc.*, 657 F.Supp.3d 535, 561 n.22 (S.D.N.Y. 2023) (quoting H.R. Rep. No. 117-234, at 3 (2022)). "However, the Congressional Record demonstrates that while Congress felt public policy required the legislation to stop protecting predators and to stop silencing survivors, Congress specifically considered whether to make the Ending Forced Arbitration Act retroactive and chose not to do so." *Preciado v. Concorde Career Colleges, Inc.*, No. 3:22-CV-1745-JR, 2023 WL 3742981, at *4 (D. Or. Apr. 19, 2023), *report and recommendation adopted*, 2023 WL 3737882 (D. Or. May 31, 2023). Instead, the Act applies "with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act [March 3, 2022]." Pub. L. No. 117-90, § 3, 136 Stat. 26 (Mar. 3, 2022). Thus, "[w]hile the Act represents a significant sea change in the enforcement of arbitration provisions, Congress has chosen to temper that change through prospective rather than retrospective applicability." *Zinsky v. Russin*, No. 2:22-CV-547, 2022 WL 2906371, at *4 (W.D. Pa. July 22, 2022).

Because the Act became effective on March 3, 2022, very few cases had addressed the issues before us at the time of the proceedings in the trial court, which spanned from September 2022 to June 2023. In light of the fact that the Act has now been in effect for three years, we have the benefit of additional cases interpreting it and applying it, including one case from the Tennessee Court of Appeals, one case from a federal district court in Tennessee, and a couple of cases from federal circuit courts of appeals.

### A. Effective Date & Accrual of the Claim

Soon after the passage of the Act, several courts had occasion to consider whether it applied to cases in which *all* of the offensive conduct at issue occurred prior to its date of enactment, but the case was filed thereafter. As previously noted, the trial court in this case recognized that another Tennessee chancery court had held that the Act applied even where all of the offensive conduct occurred prior to March 3, 2022, so long as the complaint was filed thereafter. This Court recently resolved the appeal in that case and reversed the chancery court's ruling to that effect, in *Grimsley v. Patterson Co., LLC*, No. M2022-00987-COA-R3-CV, 2023 WL 7327720 (Tenn. Ct. App. Nov. 7, 2023).

In *Grimsley*, the plaintiff had filed suit in Williamson County Chancery Court, alleging a "sexually hostile work environment" and sexual harassment. *Id.* at *1. The plaintiff had resigned from her employment in December 2021 and filed her complaint on March 16, 2022. *Id.* On appeal, the plaintiff argued that "the claim or dispute did not arise or accrue until the civil action was filed or alternatively the later date when the company moved, in response, to compel arbitration," and both of those dates were after March 3, 2022. *Id.* at *2. However, we found that *neither* of those dates was controlling. *Id.* We concluded that the Act did not govern her case because her "claim or dispute" did not arise or accrue on or after the Act's effective date. *Id.* at *2-3. The plaintiff suggested that the pivotal language regarding the effective date of the Act should be read to link the word "claim" with "arises" and "dispute" with "accrues," indicating that Congress intended to treat those words differently. *Id.* at *3. She interpreted "arises" to mean "the date the Plaintiff knew or should have known of a dispute," while "accrues" would mean "the date the lawsuit was filed (or the date the dispute accrued related to the arbitration provision)." *Id.* However, we were not aware of any court decision, at that time, reading the language of the Act in that manner. *Id.* We found that "the vast majority" of courts that had considered the issue had rejected arguments akin to those advanced by the plaintiff, although two had read the statute broadly in the way she suggested, "emphasizing the importance of the act of filing." *Id.* Still, we explained that the clear majority of courts had rejected such a reading of the statute for, collectively, at least ten different reasons. *Id.* at *4.

"One," some courts had observed that "a conventional interpretation of the critical terms governing the effective date leads to an understanding that the latest potential date that a dispute or claim arises or accrues is the date when a plaintiff becomes aware of her injuries." *Id.* (citing *Walters v. Starbucks Corp.*, 623 F.Supp.3d 333, 338 (S.D.N.Y. 2022); *Newcombe-Dierl v. Amgen*, No. CV 22-2155-DMG (MRWx), 2022 WL 3012211, at *5 (C.D. Cal. May 26, 2022)). Two, that "conventional understanding" of the critical terms "is in accordance with how courts have interpreted similar language in the context of Title VII sexual harassment claims in which the key dates are linked to when the plaintiff knew or should have known of the discriminatory act or when the adverse employment action is taken." *Id.* (citing *Marshall v. Hum. Servs. of Se. Texas, Inc.*, No. 1:21-CV-529, 2023 WL 1818214, at *3 (E.D. Tex. Feb. 7, 2023); *Palmer v. Johns Island Post Acute, LLC*, No. CV 2:22-3432-RMG-KDW, 2023 WL 4409038, at *8 (D.S.C. Mar. 7, 2023), *report and recommendation adopted*, No. 2:22-CV-3432-RMG, 2023 WL 4117366 (D.S.C. June 22, 2023)). "As for why this well-established interpretation of Title VII language is persuasive when interpreting this Act, a court observed that the Act 'should be interpreted in accordance with these well-settled accrual principles that apply to harassment claims—the very claims that are the heart of the' Act.'" *Id.* (citing *Olivieri v. Stifel, Nicolaus & Co., Inc.*, No. 21-CV-0046 (JMA) (ARL), 2023 WL 2740846, at *6 (E.D.N.Y. Mar. 31, 2023), *perm. app. filed* (2d Cir. Apr. 21, 2023)). Three, courts had concluded that a claim or dispute related to sexual harassment cannot arise or accrue after the employee is no longer

employed by the employer. *Id.* (citing *Bopda v. Comcast of the Dist., LLC*, No. CV PJM 22-2889, 2023 WL 6292767, at \*3 (D. Md. Sept. 27, 2023); *Palmer*, 2023 WL 4409038, at \*8). Four, in setting the effective date of the Act, Congress did not employ language related to case filing but instead utilized language referencing the claim or dispute arising or accruing, even though in another section of the Act, Congress did employ language regarding case filing. *Id.* (citing *Barnes v. Festival Fun Parks, LLC*, No. 3:22-CV-165, 2023 WL 4209745, at \*9 (W.D. Pa. June 27, 2023)). Fifth, courts had observed that dictionary definitions "differentiate dispute and claim by the point in time they come into existence, indicating that a dispute is an underlying conflict which will later give rise to the lawsuit while a claim refers to an existing right which may be the object of a lawsuit." *Id.* (quoting *Barnes*, 2023 WL 4209745 at \*10). Sixth, the "plain language" of the Act indicates that the claim or dispute refers to the claim or dispute of sexual harassment, not a dispute regarding arbitrability. *Id.* (citing *Steinberg*, 2022 WL 3371323, at \*2). Seventh, the Act refers to a "predispute arbitration agreement," signaling the use of "dispute" refers to the discriminatory conduct underlying the complaint. *Id.* (citing *Barnes*, 2023 WL 4209745, at \*10). Eighth, use of the phrase "arises or accrues" provided for prospective rather than retrospective application of the Act. *Id.* at \*5 (citing *Zinsky*, 2022 WL 2906371, at \*4). Ninth, "in cases where the underlying actions involved state claims, courts have looked to state court interpretations of the terms 'arise' and 'accrue' which have been linked to injury and discovery." *Id.* (citing *Palmer*, 2023 WL 4409038, at \*8; *Zinsky*, 2022 WL, at \*3). And finally, a court had considered the legislative history of the Act and determined that "the only backward-looking impact of the measure is application as to arbitration agreements signed prior to the effective date of the Act but that the sexual harassment conduct itself would have to be after the passage of the Act to be within the reach of the statutory provision." *Id.* (citing *Barnes*, 2023 WL 4209745, at \*11).

After summarizing these ten reasons given by courts across the country, the *Grimsley* court proceeded to examine Tennessee law. *Id.* We noted that Tennessee courts had frequently applied the language "arise and accrue," for example, in considering limitations periods and venue decisions. *Id.* In those contexts, Tennessee courts had "repeatedly concluded that they reference *conduct* predating the filing of a lawsuit." *Id.* (citing *Akers v. Sessions Paving Co.*, No. M2012-02602-COA-R3-CV, 2013 WL 4107622, at \*3 (Tenn. Ct. App. Aug. 13, 2013), *perm. app. denied* (Tenn. Jan. 14, 2014); *Dobson v. Marion Cnty.*, No. M2004-02154-COA-R3-CV, 2006 WL 1026422, at \*4 (Tenn. Ct. App. Apr. 18, 2006); *Parrish v. Marquis*, No. W1999-02629-COA-R3-CV, 2000 WL 1051842, at \*4 (Tenn. Ct. App. July 31, 2000); *Pilcher v. Carroll*, 15 Tenn. App. 423, 425-26 (Tenn. Ct. App. 1932)). Thus, the meaning that Tennessee courts had given to these words in other contexts aligned with the majority understanding of the Act. *Id.*

Even assuming for purposes of argument that the terms claim and dispute and arise and accrue should be interpreted as having different meanings, we said we would still conclude that the *Grimsley* case did not fall within the ambit of the Act. *Id.* We concluded that "the term 'dispute' is linked with the underlying conduct giving rise to the claim, not

to a dispute over arbitrability," which eliminated the latest date suggested by Ms. Grimsley -- the date of the filing of a motion to compel arbitration. *Id.* In addition, we found that Congress simply had not provided for the filing date to be controlling as the effective date of the Act. *Id.* Therefore, "whatever variations may exist" in the critical terms, we could not say that the claim or dispute arose or accrued after the last date of employment. *Id.* Thus, the Act did not apply to the facts in *Grimsley*, where all of the offensive conduct pre-dated the Act, but the case was filed days after it became effective.[3] *Id.*

Several other courts have now considered factual situations more like the one before us, where the alleged sexual harassment began before the effective date of the Act and continued to occur thereafter. The United States Court of Appeals for the Second Circuit recently considered one such case in *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74 (2d Cir. 2024). At the outset, the Court succinctly summarized its decision as follows:

> As we explain below, we agree with the district court that the EFAA applies in this case. By its terms, the statute applies with respect to "any dispute or claim that accrues on or after" the Effective Date. Pub. L. No. 117-90, § 3, 136 Stat. at 28. The term "accrue" means the same thing under the EFAA as it does in the statute-of-limitations context. Pursuant to the continuing violation doctrine, the statute of limitations for hostile work environment claims runs from the time of the last act in the continuing course of discriminatory or retaliatory conduct. Olivieri began to experience a retaliatory hostile work environment before the Effective Date, but the continuing course of conduct that underlies her retaliatory hostile environment claim persisted *after* the EFAA was enacted. Her claim thus accrued after the Effective Date, the EFAA applies in this case, and she was permitted to invalidate her arbitration agreement.

*Id.* at 77-78. The Court then went on to elaborate as to its reasoning. It framed the "central issue" on appeal as whether the claims accrued on or after the effective date. *Id.* at 85. The defendants argued that the claims had already accrued before the effective date of March 3, 2022, so the Act did not apply. *Id.* "According to them," the Court explained, "a claim

---

[3] The U.S. Court of Appeals for the Fourth Circuit recently affirmed a similar ruling determining accrual based on the date of the alleged conduct. In *Bopda v. Comcast of the Dist., LLC*, No. CV PJM 22-2889, 2023 WL 6292767, at *3 (D. Md. Sept. 27, 2023), *aff'd*, No. 23-2148, 2024 WL 399081 (4th Cir. Feb. 2, 2024), the federal district court held that the plaintiff's sexual harassment claim "accrued before March 2022 as his employment with Comcast ran from October through December 2021." Thus, the Act did not apply because the plaintiff's claims "accrued before passage of the EFAA," even though his complaint was filed in September 2022. *Id.* at *2-3. The Fourth Circuit summarily affirmed, stating, "The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, 9 U.S.C. §§ 401 to 402 (EFAA), does not apply retroactively to claims that accrued before its enactment on March 3, 2022, and Bopda's other assignments of error are plainly meritless." *Bopda v. Comcast of the Dist., LLC*, No. 23-2148, 2024 WL 399081, at *1 (4th Cir. Feb. 2, 2024).

accrues when it *first* becomes actionable." *Id.* (emphasis added).  The defendants reasoned that it would be illogical to hold that the "claims accrued both before and after the EFAA, making her claims somehow both arbitrable and not." *Id.*  The plaintiff, on the other hand, argued that her hostile work environment claims were subject to the continuing violation doctrine, and as a result, they accrued after the effective date of the Act.  *Id.*  She alleged that because she continued to experience a retaliatory hostile work environment after the EFAA was enacted, her claims "continued to accrue post-EFAA under the continuing violation doctrine." *Id.*

The Court agreed with the plaintiff, beginning with another brief overview of its reasoning:

> To get there, we consider what it means for a claim to "accrue," and conclude that the concept is tightly bound with the operation of statutes of limitations. Thus, when a claim accrues turns on the law applicable to the type of claim in question.  In the context of claims subject to the continuing violation doctrine, a claim *first* accrues when the plaintiff has an actionable claim; but because such a claim is a single and indivisible claim arising from numerous specific acts undertaken in a continuing course, the claim reaccrues—it is essentially reborn—with each successive act that is part of that continuing course.  We reject Defendants' arguments that in the EFAA Congress intended the phrase "any . . . claim . . . accrues" to mean only when a claim "first accrues," that the term in the EFAA has something other than its accepted legal meaning, that our interpretation leads to absurd results, and that we are impermissibly applying the EFAA retroactively.

*Id.*  As the Court explained, when a claim "accrues" depends on the nature of the claim, and "[s]ome causes of action accrue serially: they accrue (and reaccrue) pursuant to the continuing violation doctrine." *Id.* at 87-88.  A hostile work environment claim is one common type of claim that is subject to the continuing violation doctrine. *Id.* at 88.  Unlike discrete acts, the very nature of a hostile work environment claim involves repeated conduct. *Id.* (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). "A hostile work environment generally doesn't occur on any one day; it emerges 'over a series of days or perhaps years.'" *Id.* (quoting *Morgan*, 536 U.S. at 115). "It is this 'constellation of events' that gives rise to a hostile work environment claim. *Id.* (quoting *King v. Aramark Services, Inc.*, 96 F.4th 546, 560 (2d Cir. 2024)).  As such, under the continuing violation doctrine, "such claims do not accrue—and the statute of limitations period does not begin to run—'until the last discriminatory act in furtherance of' the hostile work environment." *Id.* (quoting *Tassy v. Buttigieg*, 51 F.4th 521, 532 (2d Cir. 2022)). "[S]uch claims accrue, and reaccrue, each time the defendant commits an act that is part of the same course of harassing conduct." *Id.*  So, although the Second Circuit agreed with the defendants that "a claim accrues when it 'comes into existence,'" the Court explained that this definition was not "the end of the matter." *Id.*  "A hostile work environment claim

- 10 -

continues to accrue, or reaccrues, each time the defendant engages in an act that is 'part of the ongoing, discriminatory practice that created a hostile work environment.'" *Id.* (quoting *King*, 96 F.4th at 561). "[S]uch claims can have multiple accrual dates." *Id.* at 89.

In light of these principles, the Court explained that the defendants' argument about the claim having already accrued prior to the effective date "might make sense in the context of a claim for which there is a single accrual date, but not in the context of a claim subject to the continuing violation doctrine." *Id.* at 88-89. Under the continuing violation doctrine, the plaintiff's claim "*did* accrue before the EFAA was enacted. And it *reaccrued* with each successive act that was part of the single continuing course of conduct underlying the hostile work environment claims." *Id.* at 89. The Court noted that Congress had used language in multiple other statutes regarding when a claim "first accrues," but it did not do so here. *Id.* Moreover, the Court deemed it appropriate to presume that Congress intended this meaning of accrual when "the EFAA applies to 'sexual harassment dispute[s],' 9 U.S.C. § 402, which are prototypical 'hostile work environment' claims[.]" *Id.* "Congress knew that the accrual rules that apply to hostile work environment claims would come into play in such cases." *Id.* at 90. Thus, there was "nothing absurd about concluding that an indivisible but continuing claim accrued both *before* the enactment of the EFAA and *after*," given that "hostile work environment claims accrue in just such a manner." *Id.* Applying these principles to the facts before it, the Court explained that "if Olivieri has alleged that upon her return [after March 3] Defendants engaged in acts that are part of the same course of conduct underlying her hostile work environment claims, those claims have accrued after the EFAA's effective date." *Id.* at 92. She had "so alleged," so the Act applied. *Id.*

Many other courts have likewise held that the Act applied in cases where the relevant conduct occurred both before and after March 3, 2022, determining the accrual date by applying the continuing violation doctrine. *See, e.g.*, *Cardenas v. F.D. Thomas*, *Inc.*, No. 2:24-CV-01814-DAD-JDP, 2025 WL 418753, at *7-8 (E.D. Cal. Feb. 6, 2025) ("[P]laintiffs' complaint includes specific allegations of repeated sexual harassment that started before enactment of the EFAA and continued throughout until each plaintiff's employment with defendant ended. . . . [P]laintiffs have alleged a continuing violation such that their claim for sexual harassment hostile work environment accrued after enactment of the EFAA."); *Hix v. Dave & Buster's Mgmt. Corp., Inc.*, No. 3:23-CV-623-AR, 2023 WL 9425283, at *7 (D. Or. Nov. 14, 2023), *report and recommendation adopted*, 2024 WL 326592 (D. Or. Jan. 29, 2024) (holding that "[t]he EFAA [] applies to plaintiffs' hostile work environment claims" where there was "conduct straddling the EFAA's effective date" but "the cases are consistent with the view that a sexual harassment claim accrues on the date of the last act that is part of the alleged hostile work environment"); *Betancourt v. Rivian Auto., LLC*, No. 22-1299-JES-JEH, 2023 WL 5352892, at *5 (C.D. Ill. Aug. 21, 2023) ("The Plaintiff here has pled that she was subjected to sexual harassment and a hostile work environment which started in December 2021 and continued until she left her employment in April 2022. The alleged misconduct represents a continuing violation

which was ongoing on the date the EFAA was enacted with the result that the Arbitration Agreement and joint-action waiver are nonenforceable."); *Watson v. Blaze Media LLC*, No. 3:23-CV-0279-B, 2023 WL 5004144, at *3 (N.D. Tex. Aug. 3, 2023) ("According to Blaze, Watson could have brought her claims 'as early as December 3, 2021.' Thus, Blaze argues, Watson's 'dispute or claims accrued prior to March 3, 2022.' Because Watson alleges a continuing violation under Title VII, the Court disagrees. . . . [C]ourts have concluded that, for purposes of the EFAA, hostile work environment claims could accrue on the date of the last act contributing to the violation.") (record citations omitted); *Delo v. Paul Taylor Dance Found., Inc.*, 685 F.Supp.3d 173, 187 (S.D.N.Y. 2023) ("The post-March 3, 2022 allegations can thus be considered acts that 'contribute' to the hostile work environment, and as such, Delo's claim accrued after the EFAA's enactment date."); *Doe v. Second St. Corp.*, 105 Cal. App. 5th 552, 571-72 (2024) ("We agree with the federal authorities cited above that the EFAA applies where a plaintiff alleges a course of sexually harassing conduct that occurs both before and after the EFAA's enactment. . . . [W]e presume that when Congress used the word 'accrue' in the EFAA, it intended to import the meaning of 'accrue' developed by federal and state courts over many years in the context of sexual harassment claims—that is, that a sexual harassment claim asserting a continuing violation 'accrues' on the date of the last act constituting such violation, even if the conduct could have been actionable earlier.").

Here, Ms. Ruiz has asserted a claim for hostile work environment sexual harassment under the Tennessee Human Rights Act. "It is beyond dispute that the THRA applies to claims of employment discrimination on the basis of hostile work environment sexual harassment." *Spicer v. Beaman Bottling Co.*, 937 S.W.2d 884, 888 (Tenn. 1996), *overruled on other grounds by Booker v. The Boeing Co.*, 188 S.W.3d 639 (Tenn. 2006) (citing *Campbell*, 919 S.W.2d at 31). Such a claim is governed by the one-year statute of limitations in Tennessee Code Annotated section 4-21-311(d), which provides that "[a] civil cause of action under this section shall be filed in chancery court or circuit court within one (1) year after the alleged discriminatory practice *ceases*[.]" *McCain*, 2021 WL 2156912, at *4 (emphasis added). "The term ''ceases' connotes and contemplates an ongoing course of conduct." *Id.* at *5 (quoting *Booker*, 188 S.W.3d at 648). "Thus, by using the word 'ceases' the General Assembly incorporated the continuing violation doctrine into the THRA's statute of limitations."[4] *Jackson v. City of Cleveland*, No. E2015-

---

[4] We recognize that the EFAA provides that "[a]n issue as to whether this chapter applies with respect to a dispute shall be determined under Federal law." 9 U.S.C. § 402(b). However, the Act applies "with respect to a case which is filed under Federal, Tribal, or State law." *Id.* § 402(a). Here, the plaintiff asserts a state law claim under the THRA. As we noted in *Grimsley*, "in cases where the underlying actions involved state claims, courts have looked to state court interpretations of the terms 'arise' and 'accrue' which have been linked to injury and discovery." 2023 WL 7327720, at *5. This Court likewise looked to "[t]he meaning that Tennessee state courts ha[d] given these words[.]" *Id.* Likewise, in *Zinsky*, 2022 WL 2906371, at *3 (W.D. Pa. July 22, 2022), the plaintiff asserted sexual assault, and the district court looked to state law to determine when the state-law claim accrued. *See id.* ("Under Texas law, the applicable law under the Agent Contract, a state-law tort claim, like sexual assault, accrues when facts come into existence

- 12 -

01279-COA-R3-CV, 2016 WL 4443535, at *5 (Tenn. Ct. App. Aug. 22, 2016) *perm. app. denied* (Tenn. Dec. 15, 2016) (quoting *Booker*, 188 S.W.3d at 648).

"[T]he continuing violation doctrine applies when the discriminatory acts take place over time." *Booker*, 188 S.W.3d at 644. It "allows a plaintiff to challenge an ongoing, continuous series of discriminatory acts in their entirety as long as one of those discriminatory acts falls within the limitations period." *Spicer*, 937 S.W.2d at 886. This "relieves a plaintiff from the burden of proving that the entire violation occurred within the limitations period." *Id.* at 889. "[P]erhaps the most important factor supporting use of the continuing violation doctrine in employment discrimination cases is the fact that 'many discriminatory acts cannot be viewed as discrete incidents, and often unfold rather than occur, making it difficult to precisely pinpoint the time when they take place.'" *Booker*, 188 S.W.3d at 643 (quoting *Spicer*, 937 S.W.2d at 889). Discriminatory conduct outside the statute of limitations period is not necessarily barred from redress, as "'[t]he continuing violation doctrine essentially allows a plaintiff to bring a claim for discriminatory conduct that occurs outside the limitations period if the discriminatory conduct is sufficiently related to conduct occurring within the limitations period.'" *Word v. Knox Cnty.*, No. E2018-01843-COA-R3-CV, 2020 WL 838534, at *6 (Tenn. Ct. App. Feb. 20, 2020) (quoting *Booker*, 188 S.W.3d at 643). Accordingly, "a hostile work environment claim may be timely when only a single act that contributes to the hostile environment occurs within the limitations period." *McCain*, 2021 WL 2156912, at *5. "The discriminatory conduct is treated as one continuing violation that ends within the limitations period."[5]

---

that authorize a claimant to seek a judicial remedy. . . . Even if Texas law did not apply here, a Pennsylvania tort claim accrues as soon as the right to institute and maintain a suit arises, which, in most tort actions, is at the moment the injury is sustained. . . . Thus, under either Texas or Pennsylvania tort law, Ms. Zinsky's sexual assault dispute or claim arose or accrued before the date of enactment of the EFASASH Act.") (quotations omitted); *see also Palmer*, 2023 WL 4409038, at *8-9 (D.S.C. Mar. 7, 2023), *report and recommendation adopted*, 2023 WL 4117366 (D.S.C. June 22, 2023) ("[T]he issue is whether the 'dispute or claim' 'ar[o]se or accrue[d] on or after' March 3, 2022. It did not. South Carolina courts have clearly defined when a claim arises or accrues."). B*ut see Hix*, 2023 WL 9425283, at *8-9 (D. Or. Nov. 14, 2023), *report and recommendation adopted*, 2024 WL 326592 (D. Or. Jan. 29, 2024) ("whether the 'dispute or claim [arose or accrued] on or after [March 3, 2022],' is determined under federal law, even for claims brought under state law"). As the Second Circuit explained in *Olivieri*, "[f]ederal law determines when federal causes of actions accrue, just like state law determines when state-law claims accrue." 112 F.4th at 87 (quotations omitted); *see also Cardenas*, 2025 WL 418753, at *6 (E.D. Cal. Feb. 6, 2025) ("The term 'accrue' means the same thing under the EFAA as it does in the statute-of-limitations context. As such, where the plaintiff brings a state cause of action, the state's rules regarding accrual apply[.]") (quotations omitted).

[5] In *Spicer*, 937 S.W.2d at 889-90 (quotations and citations omitted), the Court explained:

[W]e find persuasive the rationale supporting the continuing violation doctrine and adopt it in Tennessee. Courts have recognized, however, only two narrowly limited instances in which the continuing violation doctrine applies. The first category arises where there is some evidence of *present* discriminatory activity giving rise to a claim of a continuing violation, for example where an employer continues to presently impose disparate work

- 13 -

*Jackson*, 2016 WL 4443535, at *5.

As the trial court aptly noted, Tennessee courts have historically considered three factors to determine whether a defendant's conduct was a series of discrete acts or a continuing violation. *Jackson*, 2016 WL 4443535, at *6. The first factor is subject matter – whether "the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation[.]" *Id.* (citing *Spicer*, 937 S.W.2d at 890). The second factor is frequency – whether the alleged acts are recurring or more in the nature of an isolated work assignment or employment decision. *Id.* The third factor, historically considered, was permanence, meaning, whether the act had a degree of permanence that would trigger an employee's awareness of and duty to assert his or her rights. *Id.* However, after initially recognizing these factors in *Spicer*, the Tennessee Supreme Court later overruled *Spicer* "to the extent that it imposed a 'discovery rule' on continuing violation claims." *Booker*, 188 S.W.3d at 649. The Court explained that continuing violations cease when they end, not when the employee's awareness of them should alert him or her to assert his or her rights. *Id.* at 648. "Consequently, it appears that the 'degree of permanence' is no longer a significant part of continuing-violation analysis." *Jackson*, 2016 WL 4443535, at *6 n.5 (citing *Booker*, 188 S.W.3d at 648-49).

Returning to the facts of the case before us, we note that the employers' arguments on appeal are rather limited. They argue that the Act cannot apply to the sexual harassment hostile work environment claim in this case because "some of the alleged conduct" occurred prior to March 3, 2022. Because the complaint alleges that Ms. Ruiz was "subjected to a sexually hostile work environment and sexual harassment" "[w]ithin a few weeks" of starting work in January 2022, and some of the conduct admittedly occurred prior to March 3, 2022, the employers argue the Act simply cannot apply because the conduct had already begun by the date of enactment. The employers argue that a claim

assignment or pay rates between similarly situated employee groups. Key to establishing this exception is proof that at least one of the forbidden discriminatory acts occurred within the relevant limitations period.

The second category of "continuing violation" arises where there has been a longstanding and demonstrable policy of discrimination such as an established and repeated pattern of paying men more than women. To constitute such an established pattern, the plaintiff must clearly demonstrate some overarching policy of discrimination, and not merely the occurrence of an isolated incident of discriminatory conduct.

In *Spicer*, which involved a sexual harassment hostile work environment claim, our Supreme Court stated, "there is no evidence of an overarching policy of discrimination; therefore, we have reviewed the record to determine if there is evidence to support a present discriminatory activity, including proof that at least one of the discriminatory practices occurred within the relevant limitations period." *Id.* at 890. Likewise, in *McCain*, this Court analyzed a sexual harassment hostile work environment claim in the same manner, stating that there was no allegation of a longstanding policy of discrimination, so in order for the plaintiff to meet her burden to show the application of the continuing violation doctrine under the discriminatory activity theory, "[she] must show 'that at least one of the forbidden discriminatory acts occurred within the relevant limitations period.'" 2021 WL 2156912, at *4-5 (quoting *Booker*, 188 S.W.3d at 643).

- 14 -

"arises or accrues" at the time of the alleged harassment. Thus, they argue that "since the dispute accrues at the moment of 'the conduct at issue,' the dispute arose at some point in late January 2022 or early February 2022—which is before the EFAA was enacted." Because the complaint alleges that Ms. Ruiz was subjected to a hostile work environment within weeks of starting work, the employers reason that "any purported judicial remedy became available at some point at or near the end of January 2022 or early February 2022, which would have been 'a few weeks' after Plaintiff-Appellee was hired." The employers argue that "[a]ny such alleged additional conduct that occurred after March 3 does not constitute a separate sexual harassment dispute or claim," as Ms. Ruiz only asserts one count in her complaint, so any post-March 3 conduct is "simply additional alleged evidence" in support of her single claim.

Notably absent from the employers' analysis, however, is any application of the continuing violation doctrine. In fact, the employers argue that the trial court erred in applying the continuing violation doctrine because "the continuing violation doctrine does not apply at all to this case." Without any citation to authority in support of this argument, the employers insist that "the continuing violation doctrine is wholly inapplicable because the issue is not whether an otherwise untimely claim might be saved by the continuing violation doctrine but whether a dispute or claim can be retroactively applied to a law that was not even enacted at the time the alleged conduct arose or accrued." However, the trial court's decision to apply the continuing violation doctrine is amply supported by caselaw from numerous courts that have considered the precise issue before us, involving accrual in the context of considering the effective date of the Act. *See, e.g.*, *Olivieri*, 112 F.4th at 78 ("The term 'accrue' means the same thing under the EFAA as it does in the statute-of-limitations context. Pursuant to the continuing violation doctrine, the statute of limitations for hostile work environment claims runs from the time of the last act in the continuing course of discriminatory or retaliatory conduct."); *Cardenas*, 2025 WL 418753, at *7-8 (E.D. Cal. Feb. 6, 2025); *Hix* 2023 WL 9425283, at *7 (D. Or. Nov. 14, 2023), *report and recommendation adopted*, 2024 WL 326592 (D. Or. Jan. 29, 2024); *Betancourt*, 2023 WL 5352892, at *5 (C.D. Ill. Aug. 21, 2023); *Watson*, 2023 WL 5004144, at *3 (N.D. Tex. Aug. 3, 2023); *Delo*, 685 F.Supp.3d at 187 (S.D.N.Y. 2023); *Doe*, 105 Cal. App. 5th at 571-72 (2024). Thus, we discern no error in the trial court's decision to apply the continuing violation doctrine to determine the accrual date for purposes of the EFAA. Notably, the employers do not allege any error within the trial court's analysis of the continuing violation doctrine, regarding its findings as to the factors or otherwise. They simply insist that the doctrine was "wholly inapplicable." We disagree and find no support for the employers' position that the claim or dispute accrued "at the moment of 'the conduct at issue,'" meaning the initial conduct, such that "the dispute arose at some point in late January 2022 or early February 2022."

The employers next argue that this case contains allegations that are "similar if not identical to those" in *Castillo v. Altice USA, Inc.*, No. 1:23-CV-05040 (JLR), 2023 WL 8650270 (S.D.N.Y. Dec. 14, 2023). According to the employers' brief on appeal, the

*Castillo* plaintiff alleged that "sexual harassment began in 2021 – before the EFAA was enacted on March 3, 2022 – and continued until 2023," but the district court "held even if the sexual harassment allegedly occurred after March 3, because her 'dispute arose before the EFAA's enactment,' 'the EFAA does not render the Arbitration Agreement unenforceable." However, that is not the entire story. The *Castillo* court did note the plaintiff's argument that "post-March 3, 2022 conduct" contributed to a hostile work environment such that her claims accrued after the Act was enacted. *Id.* at \*7. However, the *Castillo* court explained that the relevant count in the plaintiff's complaint "does not state a hostile-environment claim of sexual harassment to which Plaintiff's continuing-violations argument might apply." *Id.* Instead, the alleged conduct underlying the claim consisted of the disclosure of an intimate image, and that alleged conduct all occurred in September 2021, "well before the EFAA came into effect." *Id.* Her complaint alleged "unlawful disclosure of an intimate image, in violation of New York City Administrative Code Section 10-180." *Id.* at \*2. The dispute or claim as to that count arose or accrued prior to the enactment of the Act.[6] *Id.* at \*7. Here, on the other hand, the count in Ms. Ruiz's complaint clearly alleges a hostile work environment claim of sexual harassment. The allegations in *Castillo* are not similar or identical to those in this case.

The employers also suggest that the Act cannot apply to the case before us, involving some conduct prior to its effective date, because it only applies prospectively, not retroactively. However, the *Olivieri* court rejected a similar argument. "[G]iven the ongoing nature of a hostile work environment claim, which is a singular claim predicated on a series of acts over a course of time, to the extent that [the plaintiff] alleges post-Effective-Date conduct, the application of the statute to a claim arising in part from that conduct can't properly be described as 'retroactive.'" *Olivieri*, 112 F.4th at 91. The defendants' rights are affected not just by conduct arising before the EFAA's enactment, but "by conduct that occurred *after* its enactment." *Id.*

Finally, the employers ask this Court to consider longstanding "liberal federal policy favoring arbitration." However, courts considering the passage of the Act have repeatedly recognized that it "pulls back on the long-held presumption towards arbitration where sexual harassment is concerned." *Steinberg*, 2022 WL 3371323, at \*2; *see, e.g., Olivieri*, 112 F.4th at 84 ("The EFAA is codified directly into the FAA and limits the scope of this broad mandate to enforce arbitration agreements."); *Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*, 746 F.Supp.3d 135, 150 (S.D.N.Y. 2024) ("the EFAA directly amends the FAA and its liberal federal policy favoring arbitration agreements to permit a party to choose to invalidate the application of an arbitration agreement to a case that contains claims that relate to a sexual harassment dispute") (quotation omitted); *Turner v. Tesla, Inc.*, 686 F.Supp.3d 917, 925 (N.D. Cal. 2023) ("The EFAA, in contrast to the FAA,

---

[6] The court also noted that, in any event, even if the harasser had called the plaintiff in September 2023, that act was not sufficiently related to the claim for disclosure of an intimate image two years prior. *Castillo*, 2023 WL 8650270, at \*7.

- 16 -

demonstrates Congress's preference that plaintiffs alleging sexual harassment be permitted to be heard in court and not be compelled to arbitration."); *Johnson*, 657 F.Supp.3d at 558 (S.D.N.Y. 2023) ("the FAA's mandates in support of its liberal federal policy favoring arbitration agreements may be overridden by a contrary congressional command") (quotation omitted); *Doe*, 105 Cal. App. 5th at 572 ("Congress articulated an entirely different intent when it amended the FAA by adopting the EFAA—to *contract* arbitrability, not to expand it. In the EFAA context, therefore, a 'heavy presumption' of arbitrability is not appropriate.").

In conclusion, we affirm the trial court's ruling that the underlying conduct alleged in the complaint sufficiently asserted a claim for hostile work environment that did not accrue until after March 3, 2022. Therefore, the claim or dispute arose or accrued after the enactment of the Act, and the Act applies to her claim or dispute temporally.[7]

### B. *Application to the Entire Case*

---

[7] Because the Act applies with respect to any "dispute or claim that arises or accrues" on or after the date of enactment, Pub. L. No. 117-90, § 3, 136 Stat. 26 (Mar. 3, 2022), we again recognize, as we did in *Grimsley*, that some courts have alternatively focused on when a "dispute" arises. *See Grimsley*, 2023 WL 7327720, at *3 ("Though the vast majority of the courts that have considered this issue have rejected arguments akin to those advanced by Ms. Grimsley, at least two courts have read the statute in a manner broadly in accord with the conclusion she has advanced, emphasizing the importance of the act of filing."); *see also Scoggins v. Menard, Inc.*, No. 2:24-CV-00377, 2024 WL 3860464, at *5 (S.D. Ohio Aug. 19, 2024) *appeal filed* (6th Cir. Aug. 30, 2024) ("Courts adopting a broader reading of the historical note have interpreted the language to provide two distinct calculations, either of which is sufficient trigger the EFAA: when the 'disputes ... arise' and when the 'claims ... accrue.'"). Some of these courts have concluded that a *dispute* does not arise merely from the fact of an injury, and therefore, a dispute does not arise solely from the alleged sexual conduct. *See, e.g.*, *Famuyide v. Chipotle Mexican Grill, Inc.*, 111 F.4th 895, 898 (8th Cir. 2024) ("Although the state-court lawsuit was not filed until July 2022, Chipotle maintains that a 'dispute' arose before March 3, 2022, and should be submitted to arbitration. Chipotle's principal argument is that a dispute arose on November 23, 2021, when Famuyide's co-worker sexually assaulted her in the restroom at the restaurant. The company maintains that a 'dispute' necessarily arises when the underlying conduct occurs. At that point, however, Famuyide had not asserted any right, claim, or demand against Chipotle, and Chipotle had not registered disagreement with any position of Famuyide's. There was no conflict or controversy between company and employee as of November 23, 2021, and no 'dispute' between the parties that could have been submitted to arbitration at that time.") However, in *Grimsley*, this Court explained that, even accepting for purposes of argument the plaintiff's "core contention that the terms 'claim' and 'dispute' and the terms 'arise' and 'accrue' should be interpreted as having different meanings, we would still conclude that this case does not fall within the ambit of the Act" because "the term 'dispute' is linked with the underlying conduct giving rise to the claim, not to a dispute over arbitrability." 2023 WL 7327720, at *5. We also observed that "Congress simply has not provided for the filing date as controlling the effective date of the Act." *Id.*

In the case at bar, the trial court made an "alternative finding" based on the filing date of this case, but we need not reverse this matter due to the fact that the court conducted an alternative analysis "considering only the timing of the underlying conduct alone and not the time of filing of a lawsuit based upon that conduct."

We now turn to the second issue presented on appeal. Having concluded that the hostile work environment claim accrued after the Act was enacted, we must determine whether additional claims asserted in the complaint must be submitted to arbitration, or whether the Act applies to the entire case. The employers argue that under the FAA, when a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if doing so leads to piecemeal litigation.

Again, our research reveals that numerous courts have addressed this very issue. Quite recently, it was considered by a federal district court in Tennessee in *Bruce v. Adams & Reese, LLP*, No. 3:24-CV-00875, 2025 WL 611071 (M.D. Tenn. Feb. 25, 2025) *appeal filed* (6th Cir. Mar. 13, 2025). In that case, the plaintiff asserted a claim under Title VII of the Civil Rights Act of 1964 for "sexual harassment and hostile work environment," in addition to claims under the Americans with Disabilities Act. *Id.* at *1. She also brought "her sexual harassment claim under the Tennessee Human Rights Act," but the district court stated that the claims would be analyzed solely under federal law because "discrimination and retaliation claims under the THRA are reviewed under the same standards as claims brought under Title VII." *Id.* at *1 n.1 (citing *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008)). The employer filed a motion to compel arbitration. *Id.* However, it was undisputed that the recently enacted Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021, 9 U.S.C. §§ 401, 402, was implicated by the plaintiff's sexual harassment claim, as she began work in May 2022. *Id.* at *1, *3. The issue before the court was whether the entire case must be tried in court or whether the ADA claims had to be severed and referred to arbitration. *Id.* at *1.

The district court ultimately held that the arbitration agreement was "unenforceable as to the entire case." *Id.* at *2. The court noted that the Act provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable *with respect to a case* which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

*Id.* at *13 (quoting 9 U.S.C. § 402(a) (emphasis added)). Given the use of the term "case," the court was required to decide, "if a single case includes claims of sexual harassment (or sexual assault) and other kinds of claims, as here, does the EFAA preclude enforcement of an otherwise applicable and enforceable arbitration agreement as to the whole case or just the sexual harassment/assault claims." *Id.* The court found that several other district courts had addressed this issue. *Id.* "By a large majority," the court explained, "the district courts interpreting the EFAA so far (including at least two within the Sixth Circuit) have concluded, based upon the statute's use of the term 'case,' that the EFAA precludes arbitration of the entire case, so long as the complaint includes a plausible sexual

harassment/assault claim." *Id.* at *14 (collecting cases).

The district court recognized that "a very small minority of cases have held that, when a litigant files a case with multiple claims, the EFAA invalidates the otherwise enforceable arbitration agreement only as to the claims that are closely related to, or intertwined with, the sexual assault or sexual harassment dispute."[8] *Id.* However, the district court found that other courts had expressly rejected the minority approach "as imposing an unmanageable standard." *Id.* As one court had noted, such an approach "'would require courts to carve up every case to which the EFAA applies by reaching judgment—with respect to each claim—on whether the claim relates to the sexual harassment or sexual assault dispute.'" *Id.* (quoting *Diaz-Roa v. Hermes L., P.C.*, No. 24-CV-2105 (LJL), 2024 WL 4866450, at *13 n.9 (S.D.N.Y. Nov. 21, 2024)). The minority approach would not only be "antithetical to the language of the EFAA and its protective intent, but it would also have the court address early in a case and in a definitive manner a question that often is not easily answered on the pleadings." *Id.* (quoting *Diaz-Roa*, 2024 WL 4866450, at *13 n.9). For example, the court noted, it may not be evident whether evidence regarding the sexual harassment would be irrelevant to a claim that such person had been deprived of wages. *Id.* (quoting *Diaz-Roa*, 2024 WL 4866450, at *13 n.9).

---

[8] For instance, in *Mera v. SA Hosp. Grp., LLC*, 675 F.Supp.3d 442, 444 (S.D.N.Y. 2023), the plaintiff asserted claims arising from an alleged hostile work environment created by sexual orientation discrimination, along with claims arising from unpaid wages. The unpaid wage claims were "pled as to a broad group of individuals in addition to Plaintiff," "including servers, bartenders, barbacks, waiters, bussers, and food runners among others, employed by Defendants," which claims did "not relate in any way to the sexual harassment dispute." *Id.* at 447-48. The plaintiff argued that the Act rendered the arbitration agreement unenforceable as to the entire case, but the district court disagreed. *Id.* at 447. The court emphasized the following language in section 402: unenforceable "with respect to a case which is filed under Federal, Tribal, or State law *and relates to* . . . the sexual harassment dispute." *Id.* (quoting 9 U.S.C. § 402(a) (emphasis added)). The court interpreted that language to mean that the arbitration agreement "is unenforceable only to the extent that the case filed by such individual 'relates to' the sexual harassment dispute, see 9 U.S.C. § 402(a); in other words, only with respect to the claims in the case that relate to the sexual harassment dispute." *Id.* "To hold otherwise would permit a plaintiff to elude a binding arbitration agreement with respect to wholly unrelated claims affecting a broad group of individuals having nothing to do with the particular sexual harassment affecting the plaintiff alone." *Id.*

Another case that appears to take the minority approach is *Dixon v. Dollar Tree Stores, Inc.*, No. 22-CV-131S, 2023 WL 2388504 (W.D.N.Y. Mar. 7, 2023), *appeal withdrawn*, 2023 WL 6459811 (2d Cir. Aug. 1, 2023). In that case, the district court first explained that the Act did not apply in that case because it only applies to claims arising on or after March 3, 2022, and the plaintiff was terminated from her job in 2020. *Id.* at *7, *1. Then, in a single sentence without any citation to authority, the court summarily added, "This Act also does not preclude arbitration of claims under other sex and age discrimination claims, such as Dixon's allegations of disparate treatment because of her age and gender, that do not allege sexual assault or harassment." *Id.* The employers rely heavily on *Dixon* in this case. They also argue that another court relied on *Dixon* to require arbitration in a subsequent case. However, our review of that case reveals that, although it involved arbitration, it did not mention sexual harassment or the Act. *See Osorio v. CVS Pharmacy*, No. 22-CV-6575DGL, 2023 WL 8644130 (W.D.N.Y. Dec. 14, 2023). The case was said to involve "racial and disability discrimination and other matters relating to his employment." *Osorio v. CVS Pharmacy*, No. 22-CV-6575L, 2023 WL 3093872, at *1 (W.D.N.Y. Apr. 26, 2023).

Having considered both the majority and minority approaches, the district court decided to follow "the clear majority of opinions on this issue." *Id.* It therefore found, "based on the unambiguous statutory language, that, because the plaintiff states a colorable sexual harassment claim, the Arbitration Agreement is unenforceable as to the entire case." *Id.*

We likewise agree with the clear majority view on this issue. As one of the first courts to address this issue explained, "[the Act] keys the scope of the invalidation of the arbitration clause to the entire 'case' relating to the sexual harassment dispute. It thus does not limit the invalidation to the claim or claims in which that dispute plays a part." *Johnson*, 657 F.Supp.3d at 558 (S.D.N.Y. 2023). A "case" is "[a] civil or criminal proceeding, action, suit, or controversy at law or in equity." *Black's Law Dictionary* (12th ed. 2024). "With the ordinary meaning of 'case' in mind, the text of § 402(a) makes clear that its invalidation of an arbitration agreement extends to the entirety of the case relating to the sexual harassment dispute, not merely the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute[.]" *Johnson*, 657 F.Supp.3d at 559. We also note, as other courts have, that Congress specifically used the term "case" in this section while using the term "claim" in the section regarding the Act's effective date. *Compare* 9 U.S.C. § 402(a) *with* Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (Mar. 3, 2022). Courts have also found it significant that Congress chose to amend the FAA directly with the EFAA, rather than for example, amending a separate statute such as Title VII to bar arbitration of certain claims arising under it. *Johnson*, 657 F.Supp.3d at 560. The use of a direct amendment "reinforces Congress's intent to override—in the sexual harassment context—the FAA's background principle that, in cases involving both arbitrable and non-arbitrable claims, 'the former must be sent to arbitration even if this will lead to piecemeal litigation.'" *Id.* at 560 (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011)). Amending the FAA with language "broadly blocking enforcement of an arbitration clause with respect to an entire 'case' 'relating to' a sexual harassment dispute reflects its rejection—in this context—of the FAA norm of allowing individual claims in a lawsuit to be parceled out to arbitrators or courts depending on each claim's arbitrability." *Id.* at 561. Therefore, *Johnson* held that "where a claim in a case alleges 'conduct constituting a sexual harassment dispute' as defined, the EFAA, at the election of the party making such an allegation, makes pre-dispute arbitration agreements unenforceable with respect to the entire case relating to that dispute."[9] *Id.*

Most courts considering the issue have agreed with *Johnson*. *See, e.g.*, *Puris v. TikTok Inc.*, No. 24CV944 (DLC), 2025 WL 343905, at *6 (S.D.N.Y. Jan. 30, 2025) *appeal filed* (2nd Cir. Feb. 12, 2025) ("The defendants also argue that even if the EFAA applies to some of Puris's claims, the rest still must be arbitrated and should be severed accordingly.

---

[9] In a footnote, the *Johnson* court noted that it "does not have occasion here to consider the circumstances under which claim(s) far afield might be found to have been improperly joined with a claim within the EFAA so as to enable them to elude a binding arbitration agreement," as the claims asserted all arose from the plaintiff's employment and were clearly properly joined in a common lawsuit. *Johnson*, 657 F. Supp. 3d at 562 n.23. The same is true here.

They are incorrect. . . . [T]he EFAA excludes the entire case -- not only certain claims -- from mandatory arbitration, so long as it 'relates to' the sexual harassment claim."); *Gill v. US Data Mgmt., LLC*, No. 2:24-CV-05255-MCS-MAR, 2024 WL 5402494, at *2 (C.D. Cal. Dec. 2, 2024) ("Defendant asserts that, even if the part of the case constituting a sexual harassment dispute is not arbitrable, the other claims may be severed and compelled to arbitration. [] Again, not so. The EFAA broadly allows claimants to elect not to arbitrate any '*case* which ... relates to ... the sexual harassment dispute.' 9 U.S.C. § 402(a). Had Congress intended sexual harassment claims to be severed and litigated in court separately from the otherwise arbitrable cases in which they arise, it would not have used the word 'case.'"); *Clay v. FGO Logistics, Inc.,* 751 F.Supp.3d 3, 20 (D. Conn. 2024) ("When a covered 'dispute' or 'claim' arises or accrues after March 3, 2022, . . . any arbitration agreement that would otherwise govern that dispute or claim may be invalidated with respect to all claims in the case by the person alleging the covered dispute or claim. . . . The EFAA's holistic application to 'case[s]' applies across the board."); *Bray v. Rhythm Mgmt. Grp., LLC*, No. CV TDC-23-3142, 2024 WL 4278989, at *8 (D. Md. Sept. 24, 2024) ("Congress would not have used the term 'case,' and instead would have used the term 'claim,' had it intended to limit the EFAA's reach to sexual harassment claims only and to require severance and arbitration of other claims within the same case. . . . In so ruling, the Court rejects Defendants' claim that the Court must subject the remaining claims to an analysis of whether they are sufficiently related to the sexual harassment claim, factually or legally, to be covered by the EFAA. The EFAA imposes no such requirement."); *Newton*, 746 F.Supp.3d at 150 (S.D.N.Y. 2024) ("Despite the FAA's background principle that, in cases involving both arbitrable and non-arbitrable claims, the former must be sent to arbitration even if doing so leads to piecemeal litigation, the EFAA's provision that a litigant may elect to invalidate an arbitration agreement for any "case" requires courts to render such agreements unenforceable for an <u>entire case</u>. . . . This is so even if only some or one of the claims a party asserts specifically relate to sexual harassment and/or sexual assault.") (quotations omitted); *Williams v. Mastronardi Produce, Ltd.*, No. 23-13302, 2024 WL 3908718, at *1 (E.D. Mich. Aug. 22, 2024) ("This Court shall follow the current majority view, that is based upon the statute's express language, and rules that the EFAA precludes arbitration of this whole case."); *Scoggins*, 2024 WL 3860464, at *7 (S.D. Ohio Aug. 19, 2024) ("Traditionally, in the context of the FAA, if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation. But the EFAA did away with this presumption by directly amending the FAA as opposed to amending a separate statute. The choice to do so reinforces Congress's intent to override—in the sexual harassment context—the FAA's background principle that, in cases involving both arbitrable and non-arbitrable claims, the former must be sent to arbitration.") (quotations omitted); *Baldwin v. TMPL Lexington LLC*, No. 23 CIV. 9899 (PAE), 2024 WL 3862150, at *7 (S.D.N.Y. Aug. 19, 2024) ("*Johnson*'s holding has been widely followed by courts in this District" and "has also been followed outside this District"); *Molchanoff v. SOLV Energy, LLC*, No. 23CV653-LL-DEB, 2024 WL 899384, at *5 (S.D. Cal. Mar. 1, 2024) ("[B]ecause Plaintiff's 2022 retaliation claim alleges conduct constituting a sexual harassment dispute—as defined by

9 U.S.C. 401(4)—, and because the case as a whole relates to that dispute, the EFAA bars enforcement of the arbitration agreement between Plaintiff and PeopleReady as to all claims in this case[.]"); *Watson*, 2023 WL 5004144, at \*2 (N.D. Tex. Aug. 3, 2023) ("If a plaintiff alleges a sexual harassment dispute, a predispute arbitration agreement is unenforceable as to the entirety of the case relating to the sexual harassment dispute, not merely the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute.") (quotation omitted); *Delo*, 685 F.Supp.3d at 180 (S.D.N.Y. 2023) ("where a dispute presents multiple claims—some related to sexual harassment, others not—the EFAA blocks arbitration of the entire case, not just the sexual harassment claims"); *Casey v. Superior Ct. of Contra Costa Cnty.*, 108 Cal. App. 5th 575, 588 (2025) ("Consistent with other state appellate courts that have considered the issue, we hold that where a plaintiff's lawsuit contains at least one claim that fits within the scope of the EFAA, the arbitration agreement is unenforceable as to all claims asserted in the lawsuit. The EFAA provides that it applies to 'a case' []—as opposed to a claim—that a plaintiff brings alleging sexual harassment, meaning that the EFAA applies to an entire case.") (quotation omitted); *Liu v. Miniso Depot CA, Inc.*, 105 Cal. App. 5th 791, 800 (2024), *review denied* (Dec. 31, 2024) ("Under the EFAA, when a plaintiff's lawsuit contains at least one claim that fits within the scope of the act, the arbitration agreement is unenforceable as to all claims asserted in the lawsuit."); *Doe v. Second St. Corp.*, 105 Cal. App. 5th at 575-77 ("*Johnson* has been widely followed. . . . We adopt *Johnson*'s well-reasoned analysis.").

In any event, the result would be the same under either the majority or minority approach in this case, as all of the claims asserted by Ms. Ruiz are closely related or intertwined with the sexual harassment hostile environment claim. She asserts retaliation after her reports of sexual harassment; intentional and negligent infliction of emotional distress due to the harassment; negligence, gross negligence, and recklessness in failing to protect her from the conduct of the employee; negligent supervision, training, and retention that ultimately led to the sexual harassment; and battery. All of these claims are intertwined with the sexual harassment claim. Thus, the arbitration agreement is unenforceable with respect to the entire case, as it relates to the sexual harassment dispute.[10]

---

[10] Because the Act applied to Count I for sexual harassment/hostile work environment based on the nature of the claim and its accrual date, it was not necessary to consider whether any of the other claims asserted would independently constitute a sexual harassment dispute within the meaning of the Act. *But see Olivieri*, 112 F.4th at 92 ("Defendants briefly argue . . . that the EFAA does not apply to Olivieri's retaliation claims because such claims do not fall within the definition of a 'sexual harassment dispute.'. . . The argument . . . is meritless. The EFAA defines a 'sexual harassment dispute' as 'a dispute *relating to* conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law.' . . . [R]etaliation resulting from a report of sexual harassment is 'relat[ed] to conduct that is alleged to constitute sexual harassment.'"); *Johnson*, 657 F. Supp. 3d at 551 n.13 ("The statutory term 'sexual harassment dispute' includes not only claims of sexual harassment, but also disputes 'relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law.' See 9 U.S.C. § 401(4). An example would be a lawsuit bringing a claim against an employer for retaliating against a plaintiff who had reported sexual harassment."); *Delgado v. Apple Georgia, LLC*, No. 4:24-CV-82 (CDL), 2024 WL

## IV.  CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded.  Costs of this appeal are taxed to the appellants, Butts Foods, L.P., and Quirch Foods LLC, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

---

4993645, at *6 (M.D. Ga. Dec. 5, 2024) (stating that a case that includes a viable "state law [] negligent retention/supervision claim based on sexual harassment would be a 'sexual harassment dispute' within the meaning of the EFAA").

It was also unnecessary to consider the accrual dates of any other claims.  *But see Clay*, 751 F.Supp.3d at 17, 20 ("Clay's hostile work environment and sexual harassment claims did not accrue after the EFAA's effective date. But Clay's retaliation claim did. . . . Because Clay's retaliation claim is a sexual harassment dispute, and because the case as a whole relates to that dispute, I conclude that the EFAA bars enforcement of the arbitration agreement as to Clay's entire case."); *Molchanoff*, 2024 WL 899384, at *4-5 (rejecting a plaintiff's argument that her 2020 sexual assault claims arose or accrued on or after the effective date of the EFAA, but "because Plaintiff's 2022 retaliation claim alleges conduct constituting a sexual harassment dispute—as defined by 9 U.S.C. 401(4)—, and because the case as a whole relates to that dispute, the EFAA bars enforcement of the arbitration agreement between Plaintiff and PeopleReady as to all claims in this case").